#### UNITED STATES of America

#### v.

#### William THURSTON

#### No. CR. 98–10026–EFH.

United States District Court, D. Massachusetts.

Oct. 2, 2003.

this case.

---

Michael K. Loucks, Susan G. Winkler, United States Attorney's Office, Boston, MA, for Plaintiff.

John E. Wall, Boston, MA, Joseph P. Russoniello, Cooley Godward, LLP, Matthew D. Brown, Cooley Godward LLP, San Francisco, CA, for Defendant.

**MEMORANDUM AND ORDER
OF RECUSAL**

HARRINGTON, Senior District Judge.

This Court sentenced Defendant Thurston, a Regional Vice–President of Damon Clinical Testing Laboratories, Inc., to a term of imprisonment of three (3) months, to be followed by a term of supervised release of twenty-four (24) months, the first three (3) months of which were to be served in home detention, after a jury convicted him on a one-count indictment of conspiring to defraud the Medicare program. The fraud charged involved the manipulation of physicians into ordering unnecessary Ferritin blood tests for Medicare beneficiaries, in violation of Title 18, United States Code, Section 371.[1]

Charged with Defendant Thurston as co-conspirators were Joseph Isola, President of Damon; Beno Kon, a Vice–President of Finance; and Gerald Cullen, also a Regional Vice–President. The government offered each of the defendants a sentence of a term of probation if he were to plead guilty.

In sentencing Defendant Thurston, this Court departed downward from a sentencing guideline which called for a sentence of sixty-three (63) to seventy-eight (78) months, but the range was trumped by the statutory maximum of sixty (60) months for a violation of Title 18, United States Code, Section 371. The government recommended a term of imprisonment of sixty (60) months. The granting of a downward departure was to correct a disparity between the sentence recommended for Thurston and the sentence of three (3) years' probation given to the company President, Joseph Isola,[2] who had pled

---

1. Damon was separately indicted for conspiracy to defraud the Medicare program. The company pled guilty and was sentenced to pay a $35,273,141.00 fine and later entered into a civil settlement under which it paid the United States and the state Medicaid programs an additional $83,756,904.00. These payments constituted full restitution.

2. Isola was called to testify in the government's case in chief as to Damon's formal

*nolo contendere*.[3] In exchange for Isola's plea, the government agreed to dismiss him from the indictment and also agreed not to appeal any sentence the court imposed. Isola's probationary sentence was imposed pursuant to his plea agreement. Thurston was offered a similar deal. A second ground for departure was that the good works Thurston did for his church and community were extraordinary.

The Court of Appeals affirmed Thurston's conviction, vacated his sentence, reversed the downward departure, and remanded for imposition of the statutory maximum of sixty (60) months in prison and for imposition of an appropriate fine. *United States v. Thurston*, 338 F.3d 50 (1st Cir.2003).

▪ An essential objective that Congress sought to achieve in enacting the Sentencing Reform Act of 1984 was "uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." United States Sentencing Commission Guidelines Manual, p. 2 (Incorporating guideline amendments effective November 1, 2002).

When the chief architect of the scheme to defraud, President Isola, is offered by the government and receives a term of three (3) years' probation for pleading *nolo contendere* and Vice President Thurston, who is Isola's subordinate, claims that he is innocent and exercises his constitutional "right to a speedy and public trial, by an impartial jury," is to receive a term of imprisonment of five (5) years, the objective of the sentencing guidelines is absolutely annulled. The terms of three (3) years' probation and five (5) years' imprisonment constitute a "wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." The goal of "uniformity in sentencing" has utterly failed to have been achieved. Moreover, it is obvious that this "wide disparity" in sentences was precipitated by Thurston's exercise of a constitutional right. He was offered by the government and would have received a term of probation by the Court if he had been willing to forego a trial by jury and had pled guilty, as had Isola.

▪ The Court recuses itself from this case. It is disinclined to mechanically impose a sentence, previously prescribed by the Court of Appeals,[4] which is clearly contrary to the objective of the sentencing guidelines and which severely punishes a defendant for exercising a constitutional right. The government should be prohibited from inflicting a harsh and punitive penalty on any citizen for the exercise of a fundamental right.

SO ORDERED.

---

his testimony was not unfavorable to Thurston.

3. Kon was prepared to plead guilty and be sentenced to probation as agreed to by the government, but became ill and died prior to the Rule 11 hearing, at which he was to change his plea to guilty; Cullen went to trial and was acquitted at the close of the government's evidence.

organization and its testing procedures, but

4. The newly granted authority given the Court of Appeals under the Protect Act, 18 U.S.C. § 3742(e), as amended, to review *de novo* a departure decision renders the trial judge superfluous and with only a nominal function at disposition. This is so notwithstanding the fact that the trial judge possesses deep understanding of the case based on knowledge acquired from presiding at two complex criminal jury trials.